**EXHIBIT B: Defendants' Facts in Issue and Proofs**

**I.     Generally**

1. Whether Hamilton was a sexual predator who presented a risk to other protective custody inmates if he were transferred there, complicating any decision as to his placement.

2. Whether the defendants reasonably relied on legal advice from DAG Polk that there was an order requiring that Hamilton be housed at Gander Hill, at a time when Gander Hill did not contain a protective custody pod.

3. Whether Hamilton was in fact housed in administrative segregation as he requested.

4. Whether each defendant, or any defendant, had any involvement in the classification review of plaintiff in June 1992.

5. Whether it was apparent to each defendant, or any defendant, in August 1992 that there was a substantial risk of serious harm to the plaintiff.

6. Whether each defendant, or any defendant, acted with deliberate indifference in reviewing the plaintiff's classification.

7. Whether plaintiff's injury on August 5, 1992 was proximately caused by each defendant's, or any defendant's, conduct.

8. Whether plaintiff took reasonable steps with respect to his own safety.

9. Whether claims against all defendants other than the original four (Lewis, Levy, Faulkner, and Queener) are time-barred.

**II.    Specifically–Defendants will prove:**

1. Hamilton never cooperated with the government, as a witness or otherwise, and was in fact the source of behavior problems and the target of investigations.

2. Hamilton was sent to a Virginia because he was a management problem and DOC officials feared he would retaliate against other inmates at Gander Hill who had informed on him, leading to his conviction for promoting prison contraband.

3. Hamilton was a sexual predator who presented a danger to other inmates if placed in protective custody.

4. Hamilton's injuries were due to his own aggressive and predatory behavior.

5. Whether Hamilton was likely to be vetoed by any warden for placement in his or her institution.

6. After Hamilton returned to Delaware, in or about December 1991 Deputy Warden Martino interviewed plaintiff and asked him if he wanted to be in protective custody, and plaintiff said "no."

7. DAG Polk advised DOC officials that Superior Court Judge Taylor issued a letter order dated March 5, 1992, that Hamilton be housed at Gander Hill and remain there.

8. Deputy Warden Martino advised Deputy Attorney General Polk on April 27, 1992 that Hamilton should be immediately moved to either DCC or protective custody at SCI.

9. Deputy Attorney Polk took no action after receiving Martino's letter.

10. Interviewed by the MDT on June 18, 1992, Hamilton refused to cooperate or provide any information, saying, "Classify me any way you want, I'll litigate this later."

11. On June 23, 1992, Hamilton wrote a letter to Superior Court Judge Taylor opposing his movement to protective custody at SCI.

12. The MDT had no authority to move Hamilton on its own.

13. Smith, Cockroft and Dixon were not present at the classification committee meeting where Hamilton's status was reviewed.

14. Clayton became Hamilton's cellmate a week before the August 5, 1992 incident and several weeks after the defendants had reviewed Hamilton's classification.

15. Hamilton was in administrative segregation at the time of the August 5, 1992 incident.

16. There was no warning to any defendant that Clayton ever threatened Hamilton.

17. Hamilton told Nurse Stokes on August 11, 1992, that his injury was caused by falling out of bed.

18. There are no witnesses to Hamilton's allegation that Clayton said Hamilton was a snitcher.

19. Hamilton told Lt. Maddox after the August 5, 1992 incident that it was caused by his personal problem with Clayton because Clayton knew Hamilton's daughter on the outside.

20. On August 5, 1992, the same day as the incident, Superior Court Judge Alford wrote a letter to Hamilton, acknowledging his opposition to being moved to protective custody at SCI, and stating, for the first time since Judge Taylor' letter order, that Gander Hill officials could move Hamilton out of that institution.

21. Gander Hill did not house protective custody inmates in 1992.

22. Hamilton was in fact housed on an administrative custody pod, as he requested.