Civil Division
        New Castle County
        (302) 577-8400        March 11, 2005

The Honorable Kent A. Jordan
United States District Court
844 N. King Street
Wilmington, DE 19801

    Re:    Hamilton v. Levy, et al.;
             C.A.No. 94-336-KAJ

Dear Judge Jordan:

    Please accept this letter as Defendants' joint response to Plaintiff's letter to Your Honor dated March 10, 2005 relating to Plaintiff's efforts to admit spoliation inference evidence at trial. For the reasons set forth herein, Plaintiff has failed to demonstrate sufficient basis to permit the presentation of spoliation inference evidence to the jury. Accordingly, the Defendants maintain their objection based on the absence of adequate foundation and logical relevance and the presence of unfair prejudice.

    I.    <u>The Law</u>

    At no point in Plaintiff's submission is there any cite to any legal authority. Our authorities are cited below.

    The seminal authority in the Third Circuit is on the issue of spoliation is *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326 (3d Cir. 1995), where the court stated:

> For the rule to apply, **it is essential that the evidence in question be within the party's control**. *Gumbs,* 718 F.2d at 96. **Further, it must appear that there has been an actual suppression or withholding of the evidence.** No unfavorable inference arises when the circumstances indicate that the document or article in question has been

The Honorable Kent A. Jordan
March 11, 2005

> lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for. *See generally* 31A C.J.S. Evidence § 156(2); 29 Am.Jur.2d *Evidence* § 177 ("Such a presumption or inference arises, however, only when the spoilation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").

72 F.3d 326, 334 (3d Cir. 1995)(emphasis added).

A New Jersey district court departed from *Brewer* in *Mosaid Technologies, Inc. v. Samsung Electronic Co., Ltd.*, 348 F.Supp.2d 332, 336, 337 (D.N.J. 2004) (permitting spoliation inference evidence in a patent case against a corporate defendant who negligently destroyed large volumes of employee e-mail after being served with process). The *Mosaid* court erred in adopting a negligence standard for the spoliation inference. However, even under that standard, *Mosaid* is distinguishable from the instant action. First, *Mosaid* involved the destruction of e-mail by a corporate employer where that corporate employer was the party-defendant. In this action, the Defendants are sued in their individual capacities on allegations of deliberate indifference, not negligence or patent infringement. Their employer, the Department of Correction, is not a party to this action. Second, in *Mosaid*, Defendant Samsung was in a quite different position than the defendants in the current case. The individual Defendants are not sophisticated defendants like Samsung, each with their own legal department to review whether or not they should discard documents or preserve them for anticipated litigation. Third, applying *Mosaid* to the instant case would be unfair when considering the volume of *pro se* inmate litigation and the volume of documents produced as a result of administering a state-wide prison system. Communications between counsel and the many DOC clients who get sued by inmates are necessarily far more limited in the corrections context than in the corporate context. Correctional employees are too unsophisticated to understand legal theories and see their evidentiary implications, and the DOC employees should not be required to save every document or be responsible when documents are destroyed without their knowledge or personal involvement.

*Brewer*'s requirements of control by a party and actual suppression were recently reinforced in *Doe v. Goldstein's Deli*. 82 Fed.Appx. 773, 2003 WL 22998139 (3d Cir.) (copy attached at Tab A). In *Goldstein's Deli* the court refused to draw a spoliation inference even though the destruction of records was a violation of the law. The *Brewer* and *Goldstein's Deli* standard is binding authority in the Third Circuit, and the *Mosaid* negligence standard is not.

This Court has adopted the *Brewer* standard and has explicitly rejected *Mosaid*'s negligence standard. In *Tracinda Corp. v. Daimler Chrysler AG*, 2003 WL 22951696 (D.Del.) (copy attached at Tab B), District Judge Farnan held as follows:

2

The Honorable Kent A. Jordan
March 11, 2005

> Defendants have not persuaded me that Mr. Sobelle acted intentionally to impair Defendants' ability to defend against Tracinda's claims. *See, e.g., Brewer*, 72 F.3d at 334 (holding that negative inference arises "only when the spoliation or destruction [of evidence] was intentional, and indicates a desire to suppress the truth") (citations omitted); *Universe Tankships, Inc. v. United States,* 388 F.Supp. 276, 286 (E.D.Pa. 1974), aff'd, 528 F.2d 73 (3d Cir. 1975) (**holding that negligence resulting in the destruction of evidence is insufficient** to require the court to draw an adverse inference).

*Id.*, at *3 (boldface added). As in the instant action, *Tracinda Corp.* involved destruction of documents due in part to offices being moved.

Similarly, in *In the Matter of: Wechsler,* 121 F.Supp.2d 404, 415-16 (D.Del. 2000), District Judge Sleet cited *Brewer* for the proposition that there must be actual suppression as opposed to documents being lost or accidentally destroyed. Judge Sleet also stated there "the court should take into account whether that party had a meaningful opportunity to examine the evidence in question before it was destroyed." *Id.*, at 416. Here, there is no evidence that any party examined the evidence after being sued or before a non-party at the central office apparently threw the records out during a move.

Authorities from other circuits support *Brewer* rather than the negligence standard advanced by *Mosaid*. *See, e.g.*, *Morris v. Union Pacific Railroad*, 373 F.3d 396, 903 (8th Cir. 2004) (reversing district court for permitting spoliation instruction and speculation by counsel as to what missing evidence would have contained, noting that an unwarranted instruction "creates a substantial danger of unfair prejudice"); *McDaniel v. Transcender*, LLC 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.) (copy attached at Tab C) (affirming district court's denial of sanctions for alleged spoliation and stating, "This inference arises 'only where the spoliation . . . was intentional, and indicates fraud and a desire to suppress the truth . . . .'" Citations omitted.).

II.     Facts

First, Plaintiff has failed to adduce what probative value, if any, the CICC minutes would have if they were available. Plaintiff's own submission demonstrates that the CICC minutes would not add new information to the evidentiary picture. Faith Levy testified that the CICC minutes contain "the inmate's name, . . . a spot for the recommendation, a spot for the decision, a spot for any other comments, some other identifying information." Levy Dep. (July 12, 2004 at 17:23 – 18:4). In fact, even though Levy indicated scant information is in the minutes, she overstated what is there. Attached to this letter at Tab D are minutes from a classification meeting on June 12, 1994, which are entirely representative of the format and content of the minutes of the classification committee. In fact, there are no comments and the minutes contain only the inmate's name, the location, and the decision. Where the decision is "no action," the minutes merely state "no action." This information is already present in the record in the large volume of documents already produced and made exhibits in this matter. At best, the CICC minutes of June 24, 1992 would be cumulative evidence. To suggest that the

The Honorable Kent A. Jordan
March 11, 2005

June 24, 1992 CICC minutes contain anything else would be pure speculation that contradicts the current record.

  Second, applying *Brewer*, we see in this case that some of the Defendants may have received a courtesy copy of the minutes after the meeting, but they had no reason to maintain them for years because the official minutes were kept at the central administration office. Given the volume of inmate classifications (estimated at 80-100 per week), these minutes would have become burdensome to maintain. The complaint was filed two years after the June 1992 meeting, and no Defendant would have had a reason to maintain the minutes until that point. No Defendant except Eldora Tillery testified as to retaining the minutes, and her testimony many years later (2004) was that she would have kept them until 1997 (see Plaintiff's submission at page 3, footnote 1)—one year before she received the complaint by mail on May 18, 1998. (D.I.116). Thus, it appears that in the relevant time period—that is, after each Defendant received the complaint—there is no evidence that any Defendant had custody of the minutes. Plaintiff fails to meet this "essential" requirement of *Brewer*. 72 F.3d at 334.

  Third, Plaintiff has failed to demonstrate a scintilla of evidence that would support an inference that any individual Defendant ever actually withheld or destroyed the June 24, 1992 CICC minutes with this litigation in mind. Even if there is evidence sufficient to suggest that a non-party custodian of this information destroyed them, the Defendants should not suffer a spoliation inference in the absence of their personal involvement in that alleged spoliation.

  In his letter to the Court, the Plaintiff attempts to support the admission of the spoliation evidence by highlighting certain deposition testimony which demonstrates the following:

  a) that minutes of CICC meetings were routinely kept;

  b) that as of 1999 Defendant Stephenson (one year after he had been added as a party) did not look for the minutes of one CICC meeting which occurred 7 years earlier;

  c) that Defendant Tillery did routinely keep CICC minutes for 5 years (which plaintiff admits would have been until 1997, more than 6 years prior to Tillery's testimony);

  d) that Defendant Tillery believed that certain "archives" from 1992 were stored at Gander Hill Prison (which proved to be incorrect);

  e) that copies of minutes for CICC meetings "from the early 1990's" would routinely be stored in the classification office;

  f) that Defendant Cockcroft and Colleen Shotzberger believed that the routine practice of the CICC was to maintain minutes;

4

The Honorable Kent A. Jordan
March 11, 2005

    g) that Colleen Shotzberger, a non-party, at one time maintained CICC minutes;

    h) that Colleen Shotzberger testified that when the "administrative building moved historical documents were destroyed or thrown away;

    i) that Defense counsel Niedzelski informed Plaintiff's counsel that when the administrator moved in 1999, "all the minutes" were destroyed.

    In support of his position, the Plaintiff offers up evidence of routine practice, and in doing so asks the Court to presume that routine was followed, speculate that the Defendants should have known when they allegedly received the June 24, 1992 CICC minutes that they would eventually be sued by the Plaintiff, and speculate that the Defendants actually received and then destroyed these minutes.

    Despite these attempts to suggest spoliation, the record fails to demonstrate that any Defendant ever actually engaged in "actual suppression or withholding" of any evidence. Plaintiff has presented no case which would permit a spoliation inference evidence in the absence of the appearance of "actual suppression or withholding of evidence" as required by *Brewer*.

    The following exchange between Plaintiff's counsel and CICC Chair Frances Lewis is typical of the Plaintiff's efforts in the deposition transcripts to establish spoliation:

    BY MS. POLESKY:

    Q:    Ms. Lewis, you mentioned that there are notes that are taken at the Classification Committee meetings. Do you know where these notes would be kept?

    A:    I would imagine each institution has their own place for putting their notes.

    Q:    Do you know whether they would be kept in their own Classification Committee file at each institution?

    A:    It probably would be the classification office.

Ms. Polesky:  Mark, I'd like to make a request for those notes, please.

Mr. Niedzielski:  They don't exist anymore.

Ms. Polesky:  They don't exist anymore?

Mr. Niedzielski:  I have been searching. They were destroyed along with the retention schedule for '92.

The Honorable Kent A. Jordan
March 11, 2005

        BY MS. POLSKY:

    Q:    And is it standard for these notes to be destroyed after a certain amount of time?

    A:    I have no idea. I would have no knowledge of when they were destroyed.

(Lewis dep., 7/29/99, 65: 12-24, 66: 1-9).

Again, Jerry Borga's responses at his July 13, 2004 deposition are typical:

    Q:    No. Was there any minutes taken at these meetings or notes taken by anyone?

    A:    Each institution took their own notes, submitted it to the secretary of the— let's see, the director of special programs secretary, and then she would type the minutes up and distribute them to the institutions.

    Q:    Do you remember who the secretary was at that time?

    A:    I want to say, Colleen Shotzburger.

    Q:    So she would receive the minutes from the individuals that took them at the meeting, and then she would type them up and distribute them to everyone?

    A:    I believe so.

    Q:    Does everyone—when you would get these meeting minutes, did you normally keep a copy of these or did you just kind of review them? What would you do with them?

    A:    They were sent to the wardens.

    Q:    Okay.

    A:    I did not keep a copy for myself, no.

    Q:    Do you know if anyone would keep copies or if any of the institutions kept copies?

    A:    I believe so.

    Q:    They did. Where would they—Do you know, say, you wanted to go today and find a copy of the minutes, where would you go to do that?

    A:    Archives, probably.

    Q:    Where is archives located?

The Honorable Kent A. Jordan
March 11, 2005

> A: Central office.
>
> Q: Is there a person you would contact or just generally contact?
>
> A: I don't know. I'm sure there is.
>
> Q: But you don't know?
>
> A: No, I don't.

(Borga dep., 7/13/04, 8:21-24, 9:1-24, 10:1-8). Other deposition testimony from the Defendants was similar: Minor 2004 dep., 14:9-14; Levy 1999 dep., 14:5-24, 15:1; Stephenson 1999 dep., 14:17-24, 15:1-24, 16:1-4.

Baseless speculation cannot support the extreme and unfair prejudice which the Defendants would experience if the Plaintiff were permitted to put on spoliation evidence. The majority of the Defendants were added years after the expiration of the statute of limitations period, and if the Court were to instruct the jury that it may infer that the Defendants "prevented production . . . out of the well founded fear that the contents would harm" them, this unfair prejudice would be greatly compounded. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995) (internal quotation).

Pursuant to the above-stated arguments the Defendants jointly request that the Court exclude any spoliation inference evidence which the Plaintiff intends to present at trial.

Respectfully submitted,

Aaron R. Goldstein
Richard W. Hubbard
Marc P. Niedzielski
Thomas H. Ellis
Ralph K. Durstein, III
Deputy Attorneys General

Xc: Clerk of Court (via e-filing and hand delivery)
John W. Shaw, Esquire (via e-filing and hand delivery)