Westlaw.

119 Fed.Appx. 774                                                                                                                Page 1
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.
Carol MCDANIEL, Plaintiff-Appellant,
v.
TRANSCENDER, LLC, and Aneel Pandey,
Defendants-Appellees.
No. 03-5599.

Jan. 31, 2005.

**Background:** Former employee sued employer and its principal, alleging retaliatory discharge under the Fair Labor Standards Act (FLSA) and age discrimination under the Age Discrimination in Employment Act (ADEA). The United States District Court for the Middle District of Tennessee granted summary judgment in favor of the defendants, and the employee appealed.

**Holdings:** The Court of Appeals, Keith, Circuit Judge, held that:
(1) genuine issues of material fact existed as to whether employee was terminated in retaliation for her efforts to have certain software development employees classified as non-exempt;
(2) genuine issues of material fact existed as to whether employee actually fulfilled her recruitment responsibilities; and
(3) denial of default judgment and sanctions sought by employee was not an abuse of discretion.
Affirmed.

West Headnotes

**[1] Federal Civil Procedure** $\mathrel{\text{C}\!\!\Rightarrow}$ 2498
170Ak2498 Most Cited Cases
Genuine issues of material fact as to whether employee was terminated in retaliation for her efforts to have certain software development employees classified as non-exempt precluded summary judgment against her on her claim of retaliatory discharge under the Fair Labor Standards Act (FLSA). Fair Labor Standards Act of 1938, § 15(a)(3), 29 U.S.C.A. § 215(a)(3).

**[2] Federal Civil Procedure** $\mathrel{\text{C}\!\!\Rightarrow}$ 2497.1
170Ak2497.1 Most Cited Cases
Genuine issues of material fact as to whether an employee actually fulfilled her recruitment responsibilities precluded summary judgment against her on her claim that she was fired because of her age, in violation of the ADEA. Age Discrimination in Employment Act of 1967, § 2 et seq, 29 U.S.C.A. § 621 et seq.

**[3] Federal Civil Procedure** $\mathrel{\text{C}\!\!\Rightarrow}$ 1636.1
170Ak1636.1 Most Cited Cases
Denial of default judgment and sanctions sought by former employee claiming retaliatory discharge under the Fair Labor Standards Act (FLSA) and age discrimination under the Age Discrimination in Employment Act (ADEA) was not an abuse of discretion, even if the employer's chief technical officer did not write a contested memorandum, which allegedly outlined many of the reasons for the company's dissatisfaction with the employee's work, as the employee claimed would have been shown by allegedly spoiled evidence. Fair Labor Standards Act of 1938, § 15, 29 U.S.C.A. § 215; Age Discrimination in Employment Act of 1967, § 7(b), 29 U.S.C.A. § 626(b).
*775 On Appeal from the United States District Court for the Middle District of Tennessee,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 Fed.Appx. 774
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
**(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))**

Page 2

Nashville Division.

James B. Johnson, Stites & Harbison, Nashville, TN, for Plaintiff-Appellant.

David A. Gold, Arkovitz, Ingram & Gold, Nashville, TN, for Defendants-Appellees.

Before KEITH and CLAY, Circuit Judges; OBERDORFER, District Judge. [FN*]

> FN* The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

KEITH, Circuit Judge.

**1 Plaintiff-Appellant Carol McDaniel ("McDaniel") appeals the district court's grant of a summary judgment in favor of Defendants-Appellees Transcender, LLC ("Transcender"), and Aneel Pandey ("Pandey") in this employment discrimination action. McDaniel alleges claims of retaliatory discharge under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215, and of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 626(b). McDaniel also challenges the district court's refusal to grant her a default judgment or to impose sanctions *776 upon Transcender and Pandey for their allegedly willful **spoliation** of relevant evidence. For the reasons set forth below, we reverse the district court's grant of summary judgment with respect to McDaniel's FLSA and ADEA claims, and affirm the decision of the district court on the **spoliation** of evidence claim.

I. *BACKGROUND*

Founded by Pandey in September 1992, Transcender develops and sells computer software. In 1994, Pandey hired John Rose ("Rose") to serve as Transcender's President. After recruiting Rose, Pandey focused on developing software and managing employees in the development department, while Rose concentrated on supervising employees in the marketing, sales, fulfillment, and administration departments. Two years after Rose joined the company, Transcender hired Ed Acerno ("Acerno") and Richard Zhu ("Zhu") as Chief Technical Officer and Chief Information Officer, respectively.

In 1998, Transcender hired a human resources manager. Only one year after joining the company, the human resources manager, who had been hired at the age of sixty-eight, notified the company, to its surprise, of his intent to retire.

In the fall of 1999, as Transcender began conducting interviews for a new human resources manager, Rose recommended that the company hire McDaniel to fill that position. At the time of her interview, McDaniel was fifty years of age and did not have experience in the computer or software development business. Despite Rose's recommendation to hire McDaniel, Pandey voiced concerns about her being hired. Specifically, Pandey asked Rose how long he thought she would stay with the company, given the facts that (1) this potential new hire was "later in her career," and (2) the previous human resources manager, whom Transcender also hired later in his career, retired from the company shortly after he was hired. Notwithstanding these concerns, Pandey agreed to hire McDaniel, who commenced her work at the company on December 27, 1999.

At the time of McDaniel's hire, Transcender was experiencing difficulty finding enough qualified employees to meet its customers' demands and its growing business needs. McDaniel concedes that "[i]t was made very clear" to her that recruiting new employees for software development was Pandey's chief concern and was to be her "number one priority." Transcender, however, did not provide McDaniel with any specific recruitment guidelines nor with a numerical goal for recruiting new employees. Rather, Pandey told her, "[w]e need to hire a lot of good people, and I'll let you know when to stop."

**2 Pandey, Acerno, and Zhu made the final hiring decisions for the software development department. After McDaniel screened applicants for positions in that department, she would forward those executives the resumes of applicants who she thought were qualified. In turn, they would interview and hire applicants from that pool. During the first month of her employment, Acerno and Zhu took McDaniel to lunch to explain the qualifications that they were seeking in software

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 Fed.Appx. 774
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))

Page 3

developers. Pandey, Acerno, and Zhu also discussed recruiting matters continually with McDaniel in "an ongoing dialogue" about Transcender's "recruiting needs," during which they made "attempts to be more specific on what experience [applicants] needed to have and that sort of thing." According to McDaniel, she and Pandey had "a lot of discussions about recruiting" software developers.

*777 In early June 2000, McDaniel completed an employee self-appraisal. In it, she stated that her "recruiting efforts have been viewed by some as inadequate." In particular, McDaniel believed that Pandey held that view because he wanted development positions to be filled more quickly. In addition, McDaniel gleaned that Pandey, Acerno, and Zhu may have been "unhappy with the candidates [she sent them] because they would not even interview them" in many cases.

As her immediate supervisor, Rose conducted McDaniel's work evaluations throughout her employment at Transcender. In an employee appraisal on July 6, 2000, Rose rated McDaniel as exceptional. He further indicated that McDaniel needed to "[r]aise standards in recruiting--we're looking for best & brightest--people like you." At the time of her evaluation, McDaniel received an increase is her salary, which was approved by Pandey. Despite these positive performance indicators, in the late summer or early fall of 2000, Pandey informed McDaniel that he had decided to absolve her of her development recruiting duties. To this end, the company hired Nancy McCarthy ("McCarthy") in December 2000.

In addition to recruiting employees, McDaniel's other human resources responsibilities included ensuring that the company complied with all employment laws. In early January 2000, shortly after her start date, McDaniel discovered that all of Transcender's employees were classified as exempt under the FLSA overtime provisions. McDaniel explained the FLSA requirements to Rose and advised him that Transcender needed to re-examine its overtime compensation practices. McDaniel later advised Pandey that the potential penalties for a violation of the FLSA included a civil action for damages by employees to recover unpaid overtime wages, attorneys' fees and court costs, criminal and civil penalties, and possibly individual liability by owners of the company.

Rose directed McDaniel to conduct an investigation and re-classify employees where appropriate. He also instructed her to discuss the project with Jamie Heartfield ("Heartfield"), who served as outside legal counsel for Transcender. On the basis of written employee job descriptions, McDaniel classified Transcender's employees as either exempt or non-exempt under the FLSA overtime provisions. After completing the project, McDaniel then transmitted her proposed classifications and a draft memorandum to Heartfield, who edited the memorandum but expressed no legal opinion on the classifications.

**3 In October 2000, Rose informed McDaniel that the company wanted to implement her proposed classifications by November 1, 2000. On November 1, McDaniel held a meeting with all of the company's managers to explain the proposed classifications. Acerno complained about the re-classification of most of his software developers, insisting that most of the employees labeled "technical editors," whom McDaniel proposed to classify as non-exempt, should have been classified as exempt because they were actually performing the duties of software content developers. In light of those concerns, Acerno and Zhu changed the job titles of all but one of the technical editors to content developer.

McDaniel also distributed a memorandum to all employees that specified whether their various positions were exempt or non-exempt. Soon thereafter, she received several complaints from employees who were previously classified as exempt but who now were classified as non-exempt. These employees were offended by their perception that Transcender viewed their work as less important than work *778 done by exempt employees. McDaniel later summarized the meeting as hostile and complained to Rose.

Given the differences of opinion that resulted from the reclassifications announced on November 1, 2000, Charles Arnold ("Arnold"), a technical editor and content developer for Transcender who also possesses a law license, interviewed certain employees and submitted a memorandum to Pandey

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 Fed.Appx. 774                                                                                                    Page 4
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))

concerning the classification of those employees. Arnold's memorandum suggested that McDaniel's classifications were erroneous. Pandey provided McDaniel with a copy of Arnold's memorandum on November 15, 2000, and asked her to respond to the proposed revisions of her classifications. McDaniel, in turn, forwarded the memorandum to Heartfield for a legal opinion about the accuracy of the proposed revisions. Heartfield opined that the employees should be classified as exempt if Arnold's description of their duties was correct, but he refused to render a legal opinion without first conducting his own investigation of the employees's duties. Following additional discussions with McDaniel and Heartfield, Pandey concluded that Arnold's suggested revisions were correct. [FN1]

> FN1. During the same period, Pandey sold Transcender to Information Holdings. Pandey remained CEO and President. At Information Holding's insistence, however, Rose left the company. Thus Pandey became McDaniel's immediate supervisor. Besides Rose, Information Holding retained all of Transcender's employees.

Transcender asserts that Pandey and Acerno discussed employee complaints about McDaniel in relation to the FLSA classifications on several occasions in November and December 2000. By the end of December, Pandey consider firing McDaniel and asked Acerno to summarize any concerns about McDaniel's work or demeanor. In response, on January 2, 2001, Acerno submitted a memorandum, which included copies of written complaints from software development employees. In the memorandum, Acerno stated his belief that McDaniel (1) had embarrassed those employees by reclassifying them, (2) was defensive and condescending when confronted with complaints by them, and (3) had done "irrevocable damage" to her relationship with them. Acerno concluded the memorandum by stating, "I do not think she is a good fit to lead and cultivate Transcender's HR department for the future." McDaniel contests the veracity of this memorandum because Acerno has admitted that he does not recall preparing or submitting this document.

**4 On January 5, 2001, Pandey and Zhu met with McDaniel. At that meeting, Pandey told McDaniel that she was being terminated as a result of her inefficiency in recruiting, mistakes in the FLSA employee classifications, and problems with software development employees.

McDaniel filed this action on May 25, 2001, alleging retaliatory discharge under § 215 of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Transcender moved for summary judgment on the FLSA claim on the basis that McDaniel did not engage in activity protected under § 215(a)(3) of the Act. In response, McDaniel asserted that she engaged in protected activity when she opposed Transcender's assertion that the five employees in the development department were exempt from overtime under the FLSA. McDaniel moved to amend her complaint to add (1) other defendants, (2) a sex discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., and (3) an age discrimination claim under the ADEA, 29 U.S.C. § 626(b). On March 21, 2002, the *779 district court denied Transcender's motion for summary judgment and granted McDaniel's motion to amend the complaint. Following discovery, Transcender filed a motion for summary judgment on the Title VII and ADEA claims and a renewed motion on the FLSA claims. The district court granted Transcender's motion for summary judgment on all three claims. McDaniel timely appealed the district court's grant of summary judgment on the ADEA and FLSA claims.

II. *ANALYSIS*
A. Standard of Review

This court conducts a de novo review of a district court's grant of summary judgment. *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000). Summary judgment is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering such a motion, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat a properly supported motion for summary judgment, an adverse party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.