119 Fed.Appx. 774
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))

Page 5

B. FLSA Claim

[1] McDaniel alleged in her complaint that she was fired in retaliation for her efforts to have certain software development employees classified as non-exempt. The FLSA makes it unlawful for an employer to fire an employee who, among other things, engages in any of the following protected acts: (1) filing a complaint against employer; (2) instituting a procedure against an employer under the FLSA; and (3) testifying in any proceeding brought under the FLSA. 29 U.S.C. § 215(a)(3). This court has previously held that to satisfy the "complaint" requirement, the plaintiff need not file a formal complaint with the Equal Employment Opportunity Commission; the lodging of a complaint with the employer is sufficient. *EEOC v. Romeo Community Schools,* 976 F.2d 985, 989 (6th Cir.1992). The district court found that by undertaking to classify Transcender's employees under the FLSA and then disputing the classifications determined by Arnold and Pandey, McDaniel had engaged in protected activity under the FLSA.

**5 In the absence of direct evidence that Transcender retaliated against McDaniel, the appropriate framework for analyzing McDaniel's claim of unlawful retaliation under the FLSA is the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1394 (10th Cir.1997) (applying the burden-shifting test to a FLSA retaliation claim). Thus, McDaniel must first make out a prima facie case of retaliatory discharge by Transcender. Then, if Transcender advances legitimate reasons for firing her, McDaniel must show that the company's proffered reasons are pretextual. To establish a prima facie case of reprisal in violation of the FLSA, McDaniel must show not only that she engaged in protected activity and that Transcender subsequently engaged in an adverse action, which she has done, but also a causal connection between her action and the firing. *See Williams v. General Motors Corp.,* 187 F.3d 553, 568 (6th Cir.1999) (analyzing retaliation claim under Title VII). Where a plaintiff makes that showing and the employer then proffers a legitimate reason for firing her, the plaintiff *780 then must "show that, but for the defendants' animus toward [her]," the firing would not have occurred. *Kearney v. Town of Wareham,* 316 F.3d 18, 23 (1st Cir.2002).

McDaniel argues that the district court erred when it ruled that she had failed to produce evidence that she was terminated in violation of the FLSA. The district court ruled that McDaniel had not established a causal connection between her FLSA activity and her firing, and that Transcender had presented legitimate business reasons to support its decision to discharge her. McDaniel's argument is based on the temporal proximity between her protected activity and her firing. Transcender's firing of McDaniel closely followed her FLSA activity, giving the impression of retaliation. *See Moon v. Transp. Drivers, Inc.,* 836 F.2d 226, 230 (6th Cir.1987) (finding that the fact that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation).

While temporal proximity alone is insufficient to show retaliation, *see Nguyen v. City of Cleveland,* 229 F.3d 559, 566 (6th Cir.2000) (explaining that temporal proximity alone generally will not support an inference of discrimination if there is no other compelling evidence), McDaniel has adduced other evidence in support of her claim of retaliation. Pandey obtained the approved job descriptions from McDaniel on November 13, 2000. Two days later, Pandey received conflicting information from Arnold. Pandey then transmitted Arnold's memorandum to McDaniel, seeking a response from her. Shortly thereafter, McDaniel advised Pandey that she disagreed with Arnold's representations in part because they were based upon modified job descriptions that she considered to be exaggerated. On November 28, 2000, Pandey sided with Arnold's suggested revisions.

**6 Twenty-two days later, on the morning of January 5, 2001, Pandey terminated McDaniel. Pandey then instructed McCarthy, McDaniel's eventual replacement, to take steps to change five employees' statuses back to exempt, which was completed in mid-January, within days of McDaniel's termination. Upon the consideration of all of the above facts, a jury could reasonably infer that McDaniel's failure to implement the change in the FLSA classifications was the reason for her termination. Thus, the district court erred in finding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 Fed.Appx. 774
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
**(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))**

Page 6

the absence of a genuine issue of material fact.

McDaniel also argues that the district court erred when it ruled that she failed to show that Transcender's articulated nondiscriminatory reason for firing her was pretext for retaliation. In opposition to McDaniel's FLSA claim, Transcender contended that she was terminated primarily as a result of her erroneous classification of employees. It is undisputed that McDaniel believed that her FLSA classifications were correct. McDaniel presented evidence that she based her decision to classify the five employees as non-exempt on the employee job descriptions that had been approved by their supervisors and interviews conducted by her assistant. Thereafter, Arnold modified the job descriptions to justify the positions as exempt. Viewing this evidence in the light most favorable to McDaniel, a reasonable jury could conclude that Transcender's purported justification for firing McDaniel was mere pretext because the company modified employee job descriptions in an apparent effort to change those employees FLSA statuses from non-exempt to exempt. Inasmuch as a genuine issue of material fact remains as to whether Transcender's reason for firing McDaniel was *781 mere pretext, the district court erred in granting summary judgment for Transcender.

C. ADEA Claim

[2] In her complaint, McDaniel also alleges that Transcender fired her because of her age, in violation of the ADEA. The ADEA makes it unlawful for an employer to fire or otherwise discriminate against a worker with respect to compensation or conditions of employment on the basis of age. 29 U.S.C. § 623(a)(1). The analytical framework used in Title VII cases applies to claims of age discrimination under the ADEA. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992). To make out a prima facie case of discriminatory discharge in the absence of direct evidence of discriminatory intent based on age, McDaniel must prove that: (1) she was a member of the protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class. *Mitchell*, 964 F.2d at 582 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If McDaniel satisfies the prima facie burden, the burden of production then shifts to Transcender, who must articulate a legitimate, nondiscriminatory reason for her termination. *Mitchell*, 964 F.2d at 584, n. 6. If Transcender meets that burden, then the burden shifts back to McDaniel, who must show that the nondiscriminatory rationale proffered by Transcender is a mere pretext for intentional discrimination based on age. *Id.* McDaniel must prove "that the asserted reasons have no basis in fact, that the reasons did not motivate the discharge, or, if they were factors in the decision, that they were jointly insufficient to motivate the discharge." *Burns v. City of Columbus*, 91 F.3d 836, 844 (6th Cir.1996).

**7 The district court assumed that McDaniel met the prima facie case and went on to consider Transcender's reasons for firing McDaniel. Transcender contended that it fired McDaniel for her failure to recruit an adequate number of new software developers and her handling of the FLSA employee classifications. While these proffered reasons do have some basis in fact, other evidence exists to establish that the proffered reasons were not the motivation for McDaniel's discharge. One of the reasons that Transcender provides for McDaniel's termination is that she failed to recruit an "adequate number of software developers." Transcender, however, never provided a definitive number of employees for McDaniel to recruit. Pandey only informed her that Transcender needed to hire "a lot" of people. To support her assertion that this was not a reason that motivated her discharge, McDaniel says that she was never provided with performance standards, but rather the recruiting methods that she used, which included screening resumes, were consistent with what Pandey specifically requested. Moreover, McDaniel received a high rating of "exceptional" from her immediate supervisor during her employment evaluation, and Pandey even authorized her pay increase.

In further support of McDaniel's ADEA claim, the record indicates that Pandey expressed reservations about hiring McDaniel because of her age. The record suggests that Pandey was upset about the short tenure and early departure of McDaniel's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

119 Fed.Appx. 774
119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N
(Cite as: 119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)))

Page 7

predecessor, who had joined Transcender at the age of sixty-eight. Thus, at the time of McDaniel's hire, Pandey specifically inquired of Rose as to how long he thought she would stay with the company, given the fact that, like her predecessor, *782 McDaniel was also "later in her career."

A jury could infer that recruitment was not a priority at the time that McDaniel was fired. Thus, a question of fact exist concerning whether McDaniel actually fulfilled her recruitment responsibilities. A jury could reasonably conclude that Pandey held reservations about McDaniel throughout her term of employment with the company on the basis of her age. Inasmuch as her failure to recruit was given as a legitimate, nondiscriminatory reason for her firing, and a question of fact exists on that issue, the district court erred in granting summary judgment on McDaniel's ADEA claim.

D. Destruction of Evidence

[3] We review the district court's decision to exclude evidence of **spoliation** for abuse of discretion. *United States v. Copeland,* 321 F.3d 582, 597 (6th Cir.2003). **Spoliation** is the intentional destruction of evidence that is presumed to be unfavorable to the party responsible for the destruction. *Id.* The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law; in this case, the law of Tennessee. *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.,* 174 F.3d 801, 804 (6th Cir.1999). Under Tennessee law, "it is a general rule that the intentional **spoliation** or destruction of evidence relevant to a case raises ... an inference, that the evidence would have been unfavorable to the cause of the spoliator." *Thurman-Bryant Elec. Supply Co., Inc. et al. v. Unisys Corp., Inc. et al.,* No. 03A01-CV00152 (Tenn.Ct.App. March 16, 1992) (citation omitted). This inference arises "only where the **spoliation** ... was intentional, and indicates fraud and a desire to suppress the truth.... Furthermore, any presumption that may arise from the **spoliation** ... is not conclusive, but rather is rebuttable." *Id.*

**8 In this case, McDaniel sought a default judgment, or, in the alternative, sanctions, against Transcender for willfully destroying relevant evidence. McDaniel served Transcender with a request for inspection and copying of its computers pursuant to Federal Rule of Civil Procedure 34. McDaniel alleges that Transcender destroyed the external creation date of a memorandum, which the company asserts was prepared by Acerno on January 2, 2001. This document outlined many of the reasons for the company's dissatisfaction with McDaniel's work. In her appeal, McDaniel argues that Acerno has testified, among other things, that he (1) did not believe she should have been terminated, (2) never recommended her termination, and (3) did not recall preparing the memorandum, which ostensibly supported her termination.

Upon our review of the record in this case, we conclude that the district court did not abuse its discretion in denying McDaniel a default judgment and sanctions. Assuming that the allegedly spoiled evidence would have shown, as McDaniel claims, that Acerno did not write the contested memorandum, that information would not have established a sufficient evidentiary basis upon which we could determine that the district court's denial of a default judgment or sanctions constituted an abuse of its discretion.

III. CONCLUSION

For the foregoing reasons, the court REVERSES the district court's grant of summary judgment in favor of Transcender on McDaniel's ADEA and FLSA claims and REMANDS the case to the district court for proceedings consistent with this opinion. The court AFFIRMS *783 the district court's denial of default judgment or sanctions against Transcender.

119 Fed.Appx. 774, 2005 WL 221534 (6th Cir.(Tenn.)), 2005 Fed.App. 0075N

**Briefs and Other Related Documents (Back to top)**

. 03-5599 (Docket)

(May. 13, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.